Argued January 6, reversed and remanded March 3, 1971

BRITT et ux, *Appellants, v.*
THORSEN et al, *Respondents.*

481 P2d 352

*Helen J. Frye*, Eugene, argued the cause for appellants. With her on the briefs were Husband, Johnson & Frye, Eugene.

*W. T. Hollen*, Newport, argued the cause and filed a brief for respondents.

Before O'Connell,* Chief Justice, and McAllister, Denecke, Holman, Tongue, Howell, and Bryson, Justices.

Reversed and Remanded.

* O'Connell, C. J., did not participate in the decision of this case.

HOLMAN, J.

Plaintiffs and defendants are the respective owners of two pieces of real property. Defendants' property lies between plaintiffs' property and the Pacific Ocean. Plaintiffs brought a suit against defendants, asserting a right-of-way across defendants' property to the ocean. Defendants denied the allegations in plaintiffs' complaint and requested affirmative relief by way of an injunction.

Immediately prior to the date set for the trial of the case, plaintiff Wayne Britt sought out defendants Lawrence Gardner and Arne Thorsen to see if the case could be settled without trial. The three men had two conversations and apparently thought that the basis for a settlement had been established, as they informed their attorneys that the case had been settled and it was taken from the trial docket. The negotiating parties contemplated a written memorial of their agreement Subsequently, a document purportedly encompassing the agreement was drawn by defendants' lawyer from information given him by the defendants. All defendants signed the agreement but plaintiffs refused to sign it.

A subsequent trial was had on supplemental pleadings in which the sole issue litigated was whether there had been a settlement of the case. Plaintiffs' and defendants' versions of what had been agreed upon were not the same. Plaintiffs contended the agreement was to dismiss the case and to leave the situation undecided. The defendants contended it was to dismiss the case and plaintiffs were to have a permissive right-of-way which could be cancelled at any time by defendants when they wished to build on that portion of the property over which the claimed right-of-way lay.

The trial court found that the case had been

settled by the parties in accordance with the defendants' version. The plaintiffs appealed.

We agree with the trial court that the parties who participated in the negotiations did arrive at the terms of an agreement for a settlement of the case. We further agree with the trial court that the terms were those testified to by the defendants. However, in view of the evidence, these findings are not sufficient to constitute a disposition of the case. The issue still remains whether the parties intended the agreement to be immediately effective or only so upon the signing of a written agreement. The law relative to whether an immediate settlement occurs where the parties contemplate a subsequent written memorandum, as they did here, is laid down in *Gen. Realty Corp. v. Douglas Lowell, Inc.*, 223 Or 244, 354 P2d 306 (1960):

"Where parties agree to reduce their agreement to writing, the question arises as to whether their negotiations constitute a contract. This question usually depends upon their intention, or, as it is sometimes expressed, upon whether they intend the writing to be a condition precedent to the taking effect of the agreement. If the written draft is viewed by the parties merely as a convenient memorial or record of their previous contract, its absence does not affect the binding force of the contract; if, however, it is viewed as the consummation of the negotiation, there is no contract until the written draft is finally signed. Where the terms of a contract have in all respects been definitely understood and agreed upon, the failure subsequently to embody such terms in a written contract, as agreed, does not prevent the contract, where no statutory objection interposes, from being obligatory upon the parties. In other words, where all the substantial terms of a contract have been agreed on and there is nothing left for future settlement, the fact alone that it was the understanding that

the contract should be formally drawn up and put in writing does not leave the transaction incomplete and without binding force, in the absence of a positive agreement that it should not be binding until so reduced to writing and formally executed. Where, however, the writing is regarded as a prerequisite to the closing of the contract, the agreement does not become binding if there has been a failure to reduce it to writing. Where it is clearly understood that the terms of a proposed contract, though tentatively agreed on, are to be reduced to writing and signed before it is complete and binding on the parties, there is no final contract until that is done." 223 Or at 253-54, quoting 12 Am Jur 522, Contracts § 25.

Applying the law to the facts of this case results in the conclusion that the parties intended to have a signed, written document before there was a binding agreement. The defendant Arne Thorsen gave the following testimony:

"Q So that in this case then the agreement that you were talking with Mr. Britt about, it was understood that it would be put in black and white and reduced to writing and signed?

"A That's what I told him in the car, yes.

"Q So far as you were concerned, that was essential to this agreement that it be a signed writing?

"A Yes, because that's the only way in Norway you can do anything.

"Q That was a condition that you insisted on here also?

"A Oh, yes."

Similarly, plaintiff Wayne Britt testified:

"Q Was this agreement or whatever it was that was reached there in the car, was that sup-

posed to have been reduced to writing and signed by the parties?

"A Well, there was supposed to have been something drawed up to writing and it be in effect after it was signed."

It should be remembered that only two of the six defendants and one of the two plaintiffs were present at the settlement negotiations. There is no evidence that any of those present had the authority to compromise and settle the rights of those not present. Thus, the circumstances of the negotiation indicate an intention by the negotiating parties that the contemplated written agreement would be signed by all of the plaintiffs and defendants before it would be effective. The settlement would accomplish its purpose only if everyone agreed; and, therefore, it would be reasonable to assume that the negotiating parties contemplated tangible assent by the parties not present before a binding agreement would come into being. Since the plaintiffs did not sign the agreement, it did not come into being.

The judgment of the trial court is reversed and the case is remanded for a new trial upon the merits.