**Albert S. CALLIE and Joyce M. Callie, Plaintiffs-Appellees,**

v.

**Bradley A. NEAR; Elizabeth R. Near; Reddington Investments, Inc.; and Ruidoso Holiday Limited Partnership, Defendants-Appellants.**

No. 86–2880.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 11, 1987.

Decided Oct. 7, 1987.

Lindsay Brew, Tucson, Ariz., for plaintiffs-appellees.

Anthony P. Marquez, El Paso, Tex., for defendants-appellants.

Before CHOY, Senior Circuit Judge, TANG, Circuit Judge, and STEPHENS,* Senior District Judge.

CHOY, Senior Circuit Judge:

Elizabeth and Bradley Near (the "Nears") and Reddington Investment, Inc. ("Reddington") appeal the district court's decision to enforce a purported settlement agreement without first holding an evidentiary hearing to determine the existence and terms of the agreement. We reverse and remand.

## BACKGROUND

On August 31, 1984, Joyce and Albert Callie (the "Callies") filed suit in the district court against, inter alia, the Nears and Reddington (the "appellants").[1] The action arose out of the Callies' investments in two limited partnerships: Reddington Investment Limited Partnership I ("RILP–I") and Ruidoso Holiday Limited Partnership ("RHLP"). Bradley Near and Reddington

were the sole general partners of RILP–I, and Bradley Near was a general partner of RHLP. The Callies sought to recover damages for alleged fraud and breach of fiduciary duties in violation of federal and state securities laws and Arizona common law.

In the meantime, the parties, acting through their counsel, began negotiating a full and final settlement. The primary issues in the negotiations involved determination of: 1) the amount of a monetary settlement, 2) the payment schedule, and 3) the method for securing payment.

In June 1986, counsel expressed the willingness of the parties to settle for $252,500. On June 9, 1986, the appellants' counsel wrote to the Callies' counsel "to confirm" the terms of the settlement. The letter contained the following pertinent provisions:

1. Brad Near will pay to Albert Callie the sum of $252,500 in complete settlement. . . .

2. Payment of the above-referenced sum shall be made in installments as follows:

(A) A payment of $52,500 on or before June 30, 1986;

(B) $50,000 on or before September 30, 1986, with a grace period of thirty (30) days;

(C) $50,000 on or before March 30, 1987, with a grace period of thirty (30) days;

(D) $50,000 on or before June 30, 1987, with a grace period of thirty (30) days; and

(E) $50,000 on or before December 30, 1987, with a grace period of thirty (30) days.

3. Brad Near will sign a judgment in the sum of $387,000 [to secure the timely payments of the installments], which judgment will not be lodged or filed with the Court, but will remain in your control and custody and its terms and conditions . . . will remain confidential.

---

* Honorable Albert Lee Stephens, Jr., Senior United States District Judge, Central District of California, sitting by designation.

1. The Nears were the sole shareholders, directors, and officers of Reddington.

4. A judgment may be filed with the Court only upon Brad Near's failure to comply with the aforementioned payment schedule.

On June 10, 1986, counsel for the Callies forwarded a proposed stipulation and judgment to the appellants' counsel. The proposed judgment provided in pertinent part:

[The Nears, Reddington, and RHLP] and each of them in connection with the sale of a security in the State of Arizona have engaged in conduct or a course of business which did result in a *fraud* or *deceit* upon the [Callies] as prohibited by Arizona Revised Statutes §§ 44–1991 and 44–1995; ....

(Emphasis added.). The appellants declined to execute the proposed stipulation and judgment. They contended that the proposed judgment was unacceptable because it was based on state security and racketeering violations.

On July 7, 1986, counsel for the Callies demanded the first installment payment, which had been due on June 30, 1986, pursuant to Paragraph 2 of the June 9th letter. The appellants refused payment. On July 10, 1986, the Callies filed a motion with the district court to enter a judgment against the appellants for $387,000 pursuant to Paragraphs 3 and 4 of the June 9th letter. In response to the motion, the appellants contended that no settlement agreement was ever reached. In the alternative, they requested an evidentiary hearing, contending that two material factual issues regarding the validity and scope of the settlement agreement were in dispute.

The district judge heard arguments on the Motion for Entry of Judgment, but did not hold an evidentiary hearing. On October 21, 1986, after receiving affidavits from counsel but without any further hearing, the district court entered judgment for $387,000 against the appellants. The judgment made no reference to the state security and racketeering violations which the appellants had found objectionable.

This appeal followed.

## DISCUSSION

The appellants contend, inter alia, that the district court erred in failing to conduct an evidentiary hearing before determining that a settlement agreement had been made. We review the district court's enforcement of a settlement agreement for abuse of discretion. *See Russell v. Puget Sound Tug & Barge Co.*, 737 F.2d 1510, 1511 (9th Cir.1984).

■ It is well settled that a district court has the equitable power to enforce summarily an agreement to settle a case pending before it. *E.g., Mid-South Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 389 (5th Cir.1984); *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir.), *cert. denied,* 429 U.S. 862, 97 S.Ct. 165, 50 L.Ed.2d 140 (1976); *Autera v. Robinson*, 419 F.2d 1197, 1200 (D.C.Cir.1969). However, the district court may enforce only *complete* settlement agreements. *Ozyagcilar v. Davis*, 701 F.2d 306, 308 (4th Cir.1983); *see Gardiner v. A.H. Robins Co.*, 747 F.2d 1180, 1189 (8th Cir.1984). Where material facts concerning the *existence* or *terms* of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing. *See Russell*, 737 F.2d at 1511; *Kukla v. National Distillers Products Co.*, 483 F.2d 619, 621 (6th Cir.1973).

In the instant case, the district court abused its discretion by not conducting an evidentiary hearing. The appellants raised two factual issues which were material for determining the validity and scope of the settlement agreement.

### I. *Intent of the Parties*

First, the appellants contended below that the settlement agreement was contingent upon the execution of a stipulation and judgment. Because no such execution occurred, the appellants argued that they had raised a substantial factual issue regarding the validity of the settlement agreement which must be resolved in an evidentiary hearing. This contention has merit.

■ Whether the parties *intended* only to be bound upon the execution of a

written, signed agreement is a factual issue. *See Ozyagcilar,* 701 F.2d at 308 n. *; *Pyle v. Wolf Corp.,* 354 F.Supp. 346, 352–53 (D.Or.1972). During the arguments on the Motion for Entry of Judgment, the district judge observed that there was no "indication that [the June 9th letter] was subject to the preparation of any documents." However, circumstances of the settlement negotiations could defeat such a conclusion. *See Fulgence v. J. Ray McDermott & Co.,* 662 F.2d 1207, 1209 (5th Cir.1981); *Pyle,* 354 F.Supp. at 353; *Britt v. Thorsen,* 258 Or. 135, 481 P.2d 352, 354 (1971). In fact, in their brief opposing the Callies' Motion for Entry of Judgment, the appellants alleged that the parties' intent only to be bound upon the execution of a written, signed agreement was set forth in the correspondence between the parties. Although the district court acknowledged this problem of intent during the arguments on the Motion for Entry of Judgment, the arguments did not clarify this issue. Accordingly, the district court erred in failing to conduct an evidentiary hearing regarding the intent of the parties.

## II. *Basis of Judgment*

In addition to the intent of the parties to bind themselves, the formation of a settlement contract requires agreement on its *material terms.* The appellants contended below that the parties never had a meeting of the minds regarding the precise method for securing payment of the settlement. The existence of conflicting evidence on this issue makes summary enforcement inappropriate.

Specifically, the appellants acknowledged that they were willing to settle for $252,500 and that Bradley Near would sign a judgment for $387,000 to secure the payment of the settlement. However, the appellants contended that the parties failed to agree on the theory of liability upon which the judgment would be based. According to the appellants, the basis of the judgment was an important focus of the negotiations.

Any mention of fraud in the judgment would jeopardize the appellants' business (syndicated real estate limited partnerships) because it is subject to rigid securities regulations. Counsel for the appellants indicated that a securities counsel for the appellants who was involved in the settlement negotiations could be called to clarify this issue. Because the appellants presented allegations which, if true, would indicate that there was no meeting of minds sufficient to effect a settlement agreement, the district court could not properly resolve this factual dispute merely by weighing the affidavits and relying on the unsworn statements of counsel. *See Mid-South Towing,* 733 F.2d at 391; *Ozyagcilar,* 701 F.2d at 308 n. *; *Massachusetts Casualty Insurance Co. v. Forman,* 469 F.2d 259, 260–61 (5th Cir.1972) (per curiam).

The failure of the district court to conduct an evidentiary hearing regarding the material terms of the purported settlement agreement cannot be justified, as suggested by the Callies, on the ground that the district court had entered a judgment which did not specify the basis of the judgment. True, this "process" presumably alleviated the disagreement between the parties regarding the theory of liability upon which the judgment would be based. However, alleviation of a disagreement does not erase the fact that the parties never had a meeting of the minds regarding the precise method for securing payment of the settlement. *See Main Line Theatres, Inc. v. Paramount Film Distributing Corp.,* 298 F.2d 801, 803 (3d Cir.), *cert. denied,* 370 U.S. 939, 82 S.Ct. 1585, 8 L.Ed.2d 807 (1962). As mentioned earlier, the district court only has the power to enforce *complete* settlement agreements. *Ozyagcilar,* 701 F.2d at 308; *see Gardiner,* 747 F.2d at 1189. Accordingly, the district court erred in failing to conduct an evidentiary hearing on the disputed terms of the settlement agreement.[2]

---

**2.** The appellants also argue that, assuming the existence of a binding settlement agreement, the district court nevertheless erred in entering a judgment against Reddington. According to the appellants, Paragraph 3 of the June 9th letter expressly provided that only Brad Near would sign a judgment. We do not reach this issue. An evidentiary hearing should first be held to

## CONCLUSION

The judgment of the district court is VACATED and the case REMANDED for an evidentiary hearing on the existence and terms of the purported settlement agreement.

determine whether a settlement agreement in fact exists.