Thomas E. MURCHISON,
Plaintiff–Appellant,

v.

GRAND CYPRESS HOTEL CORPO-
RATION, a Georgia corporation,
Defendant–Appellee.

No. 92–2354.

United States Court of Appeals,
Eleventh Circuit.

Feb. 10, 1994.

Frederic Stanley, Jr., Stanley & Ross, William G. Osborne, Osborne & Aikin, P.A., Orlando, FL, for plaintiff-appellant.

James A. Muench, Smith & Williams, P.A., Jeffrey A. Aman, Tampa, FL, for defendant-appellee.

Before COX, Circuit Judge, MORGAN and HENDERSON, Senior Circuit Judges.

MORGAN, Senior Circuit Judge:

After acquiescing to a settlement agreement which was read in open court, the Appellant now contends that he did not consent to the agreement and that his attorney was not authorized to enter into the settlement agreement. The district court, without an evidentiary hearing, denied the Appellant's motion to vacate the order of dismissal and instead entered final judgment on the settlement agreement. We AFFIRM.

## BACKGROUND

The appellant, Dr. Thomas E. Murchison, brought this action against Grand Cypress Hotel Corporation ("Grand Cypress") to settle a dispute over Murchison's access to his property. Local zoning ordinances allowed Murchison to subdivide his property into four lots, but in order to do this he needed access to the public highway from his two northern lots. This access was provided by means of a "Munger" plat, which created easements for ingress and egress. Grand Cypress acquired the property surrounding Murchison's property and developed a golf course, effectively cutting off Murchison's access to the public highway from his two northern lots. After a long running dispute, Murchison filed suit for enforcement of his access easements.

This action progressed to a jury trial. On the third day of trial, Murchison was informed by his attorney that the trial would be delayed because the parties had begun settlement negotiations. Murchison's attorney then left the courtroom and went into the hall to conduct negotiations with attorneys for Grand Cypress. The negotiation period lasted approximately twenty minutes, during which time Murchison and his attorney discussed the terms of the settlement during three separate conversations.

During the first conversation, Murchison's attorney came into the courtroom, gave Murchison a survey, and described a proposal from Grand Cypress for a North–South right-of-way which provided ingress and egress to Murchison's two northern lots. Murchison reviewed the survey and the proposed easements with his own expert surveyor, and then informed his attorney that "the new right-of-way was acceptable to gain access to the northern two lots." (Murchison affidavit ¶ 14). At this point, Murchison was clearly aware of the ramifications of accepting the proposal.[1] Murchison's attorney then conveyed his acceptance of the proposal to Grand Cypress, and the parties returned to the courtroom and announced to the court bailiff that they had reached a settlement. At this point, Murchison inquired as to the details of the agreement. He admits that his attorney explained the terms of the settle-

---

1. In his affidavit, Murchison states:

"Mr. Deglomine came back in from discussions with the Grand Cypress attorneys and I said that the new right-of-way was acceptable to gain access to the northern two lots (Note: at that juncture, I understood that my property could be subdivided into four residential lots. I had previously discussed the issue in this case that the development of the two northern lots would require an internal road on my property if my Northern 15' right-of-way, which ran East–West from my property to State Road 535, would be blocked, a situation which was not acceptable to me)." (Murchison aff. ¶ 14).

ment agreement. Murchison asked his attorney if the North–South right-of-way was the complete settlement, with no other monetary or settlement terms. After he was informed that it was, Murchison claims that he informed his attorney that "this is unacceptable." A few minutes later, the settlement was announced in open court.

The court allowed the settlement agreement to be read into the record.[2] Murchison made no objection to the court or to his attorney, either during or after the settlement agreement was read in open court.

Based on the settlement agreement announced in court on August 16, 1991, the district court entered an order of dismissal on October 29, 1991, dismissing the action "without prejudice subject to the right of any party to re-open the action within sixty (60) days, upon good cause shown, or to submit a stipulated form of final order or judgment." Sometime thereafter, Murchison determined that he was unhappy with the settlement, and on December 11, 1991, he filed a motion to vacate the order of dismissal on the grounds that his attorney was not authorized to enter into the settlement agreement. The district court denied Murchison's motion and granted Grand Cypress' motion to enter final judgement pursuant to the settlement agreement. Murchison thereafter filed this timely appeal.

## STANDARD OF REVIEW

■■■ Murchison seeks to vacate the district court's order of final judgment and to reopen the settlement agreement. We review the district court's denial of Murchison's motion for an abuse of discretion. *See Carter v. United States*, 780 F.2d 925, 927 (11th Cir.1986). Murchison also alleges as error the district court's failure to hold an evidentiary hearing before summarily enforcing the settlement agreement. We review the district court's decision to enforce a settlement agreement without an evidentiary hearing for an abuse of discretion. *Callie v. Near*, 829 F.2d 888, 890 (9th Cir.1987).

## I.

■■■ Murchison challenges the settlement agreement on the grounds that his attorney did not have authority to enter into the settlement agreement and that he did so without Murchison's consent. In the Eleventh Circuit, state law governs the scope of an attorney's authority to enter into a settlement agreement. *Ford v. Citizens and Southern National Bank*, 928 F.2d 1118, 1120 (11th Cir.1991). Under Florida law, Grand Cypress, as the party seeking to compel enforcement of a settlement agreement, must demonstrate that Murchison's attorney had clear and unequivocal authority to enter into the settlement agreement. *Weitzman v. Bergman*, 555 So.2d 448, 449–50 (Fla. 4th DCA 1990); *Vantage Broadcasting Company v. WINT Radio, Inc.*, 476 So.2d 796, 798 (Fla. 1st DCA 1985).

■■■ Murchison's attorney clearly had authority to conduct settlement negotiations.

2. The announced settlement provided:

> THE COURT: It's my understanding that you gentlemen have settled?
> MR. DEGLOMINE [former counsel for Appellant]: Yes, we have.
> MR. WILLIAMS [counsel for Appellee]: Yes, your honor.
>
> . . . . .
>
> MR. WILLIAMS: Your honor, what we'd like to do, exhibit one was the plat and we'd like to make two additional pages part of exhibit one and call it composite exhibit one and essentially what we have agreed to, and this is subject to having a survey drawn and incorporated as part of the final order approving the stipulation of settlement, the northern easement, the northern fifteen foot would be eliminated. The southern easement would be redelineated as reflected on this document. And then along the eastern fifteen feet of the Grand Cypress property where

the southern easement connects with Mr. Murchison's property there would be a fifteen foot easement which would run along the eastern fifteen feet of Grand Cypress Report property and be contiguous with the western boundary of Mr. Murchison's property.
> THE COURT: So that basically would be Equestrian Drive would redelineate the easement and have another roadway going in?
> MR. DEGLOMINE: From where Equestrian Drive first reaches Dr. Murchison's property there would be fifteen feet that would go north to the top of his property line.
> MR. WILLIAMS: We have got it drawn out pretty specifically here and we have initialed it, I think it's fairly clear. And with the court's permission we'd like thirty days to submit an order and a survey with a legal description so that it could be recorded and that would resolve the case.
> THE COURT: All right.

By Murchison's own testimony, he knew that his lawyer was in the process of negotiating a settlement. In fact, Murchison testified that "I was relying upon him [trial attorney] to include my concerns and conditions in any settlement negotiations." It is further undisputed that during the settlement negotiations, Murchison met with his attorney on at least three occasions to discuss the progress of the negotiations. However, Murchison asserts that his attorney did not have authority to settle the case unless all of his concerns were addressed.

Immediately following Murchison's third conversation, where he allegedly told his lawyer that the settlement was unacceptable, the settlement agreement was announced in open court and read into the record. The attorneys recited the proposed redelineation of the easement and then asked "with the court's permission we'd like thirty days to submit an order and a survey with a legal description so there [sic] it could be recorded and *that would resolve the case.*" (emphasis added). At no time did Murchison object in any way, either to his attorney or to the court.

Murchison argues that it was inappropriate for the district court to assume that his silence indicated approval. We disagree. Murchison discussed the terms of the settlement agreement with his attorney. The record shows that the district court made clear that the parties were entering into a settlement agreement and that the terms of the agreement would be entered into the record. Only the redelineated North–South easement was announced to the court and put in the record. Further, it was stated that this redelineation would "resolve the case." However, he did not object when the agreement was announced in open court.

Dr. Murchison is an educated man who understood the terms of the settlement agreement. If he was unhappy with the settlement agreement, then he should have objected at the time that it was read into open court. Unlike the situation in *Vantage*, Murchison knew that his attorney was attempting to negotiate a settlement and in fact took an active role in directing his attorney during the negotiations. Further, Murchison was present when the agreement was announced in open court and read into the record.

■ We favor and encourage settlements in order to conserve judicial resources. Although Murchison claims now that he did not consent to the agreement, the only reasonable conclusion to be drawn from Murchison's silence is that he agreed with and accepted the settlement. Further, we can find no reasonable explanation why Murchison would agree to dismiss a case which had not been settled. Based on the record as a whole, we conclude that Grand Cypress met its burden of showing that Murchison's attorney had clear and unequivocal authority to settle the case and the district court did not abuse its discretion.

## II.

■ Murchison also contends that the district court erred by failing to hold an evidentiary hearing before enforcing the settlement agreement. A number of courts have recognized the authority of a trial court to summarily enforce a settlement agreement without an evidentiary hearing. However, the district court may enforce only complete settlement agreements. "Where material facts concerning the *existence* or *terms* of an agreement to settle are in dispute," *Callie v. Near,* 829 F.2d 888, 890 (9th Cir.1987) (emphasis in original), or where there is a material dispute about the authority of an attorney to enter a settlement agreement on behalf of his client, the parties must be allowed an evidentiary hearing. *Millner v. Norfolk & W.R. Co.* 643 F.2d 1005 (4th Cir.1981). "Whether the court may summarily enforce such an agreement or should conduct an evidentiary hearing on the disputed issues depends upon the nature of the dispute." *Dankese v. Defense Logistics Agency,* 693 F.2d 13, 15–16 (1st Cir.1982). Summary enforcement of an alleged settlement is improper when there is a substantial factual dispute as to the terms of the settlement. *See Kukla v. Nat'l Distillers Products Co.,* 483 F.2d 619 (6th Cir.1973).

■ Murchison argues that the existence of the settlement is in dispute because his attorney did not have authority to settle the

case. As discussed earlier, Murchison's attorney had clear and unequivocal authority to enter into a settlement agreement on behalf of Murchison. Since both parties represented that an agreement had been reached, and the agreement was read into open court without objection from either party, there was no need to hold an evidentiary hearing as to the existence of a settlement.

Murchison also argues that a material dispute exists relating to his rights in his Munger easement. As a result of the settlement agreement, the Munger easement was redelineated and Murchison was given all rights in the redelineated easement that he enjoyed in the original easement. However, since Florida law is unsettled as to exactly what rights accompany a Munger easement, Murchison argues that a material dispute still exists.

A fair reading of Murchison's complaint indicates that his main concern was to secure access to his northern lots. The complaint does not seek a declaratory judgment delineating what rights accompany a Munger easement. In describing his property, Murchison makes no mention of construction and utility rights. "The deeds conveying title to the Murchison property ... reference the Munger plat which contains rights of way for ingress, egress and access to the lots numbered." (Complaint, ¶ 10). The pretrial stipulation states: "Murchison was induced to purchase the Murchison property in reliance of the fifteen-foot rights-of-way for ingress and egress to his property." The only mention of any rights other than ingress and egress are found in the statement seeking an alternative form of relief:

> "Should the court for any reason decline to ... allow Murchison uninterrupted access to the Munger rights of way ... Murchison is entitled to a redelineation of the rights of way and easements providing Murchison access, egress, construction, and utility rights along another appropriate and alternative portion of Grand Cypress' property." (Complaint, ¶ 25(b)).

This single statement, in the context of the entire pleadings, is insufficient to create a material dispute. Murchison's complaint clearly indicates that he sought access to the northern lots of his property via the Munger easements, not a declaration as to what rights are attendant to a Munger easement.

 "This case presents a not unfamiliar situation in which the relief appellant apparently wanted and the relief he asked for were not the same." *Dankese,* 693 F.2d at 15–16. We favor and encourage settlements in order to conserve judicial resources. We cannot allow a litigant to attack the integrity of the settlement process by attempting to recharacterize the focus of his litigation after he decides he is unhappy with the settlement. Undoubtedly, Murchison achieved the main object of his litigation by securing access to the two northern lots of his property. We do not find any major issues left unresolved by the settlement agreement announced in open court. Therefore, the district court did not abuse its discretion in summarily enforcing the settlement agreement.

## CONCLUSION

For all of the forgoing reasons, the judgment of the district court is AFFIRMED.