**HYDE PARK UNION CHURCH
and Linda Feil, Plaintiffs,**

v.

**Gilda CURRY, Defendant.**

No. 95 C 5030.

United States District Court,
N.D. Illinois,
Eastern Division.

May 29, 1996.

Dennis Johnson, Pugh, Jones & Johnson, Chicago, IL, for Plaintiffs.

Reed Clayton Lee, Michael Null & Assoc., Chicago, IL, for Defendant.

1. On October 11, 1995, the parties filed a Consent to Exercise of Jurisdiction by a United States Magistrate Judge. The case subsequently

## MEMORANDUM ORDER

BOBRICK, United States Magistrate Judge.

Before the court is PLAINTIFFS' RENEWED MOTION TO ENFORCE A SETTLEMENT AGREEMENT ENTERED ON SEPTEMBER 14, 1995.

## I. BACKGROUND

### A. Facts

On September 1, 1995, plaintiffs Hyde Park Union Church and Linda Feil ("Church") filed suit against defendant Gilda Curry for damages caused by Curry's alleged campaign to induce and incite families to breach their contractual relations with the Church's Nursery School after the Nursery School declined to renew her teaching contract. The Church also sought injunctive relief against Curry, including an Order prohibiting her from disclosing highly sensitive, personal, and confidential information about the children who attend the Church's nursery school, and from falsely and publicly accusing the plaintiffs of disclosing such information in violation of Illinois law.

The Church requested that Magistrate Judge Bobrick be assigned the case for a settlement conference. Judge Bucklo, who initially heard this matter on an emergency basis, granted the Church's request.[1]

On September 14, 1995, the parties negotiated a settlement agreement in this court's chambers, after which the parties were brought to open court to place the settlement agreement on the record. Mr. Johnson, attorney for plaintiffs, articulated the terms of the agreement as follows:

THE COURT (JUDGE BOBRICK): What we are going to do now is, because this is a complex resolution, is to put the terms of the settlement on the record; and this Court will find—does find that, in consideration of the mutual promises exchanged between the parties, between members of the Hyde Park Union Church and Miss

was reassigned to this court for any and all proceedings including entry of a final judgment.

Curry, that we have reached an agreement, a binding agreement, as to the disposition of this matter, and the disposition of this matter will be as follows: Mr. Johnson, I guess, would you want to articulate the terms.

MR. JOHNSON: Yes, your Honor, I will. Thank you. The defendant is agreeing, your Honor, that: She will not return to the premises of the church or the nursery school; That she will not disclose confidential information; That if she does speak of the school, that she will not defame or disparage the school or the director, that the only thing she will say about the school and her employment and its termination is that she has resolved her dispute with the school and it is time for her to move on.

THE COURT: Okay. Miss Curry, and you agree to abide by those terms?

THE DEFENDANT: Yes.

THE COURT: Okay. And, with respect to the Hyde Park Union Church, in a stipulated resolution, you agreed to those terms? Who is going to say "Yes" for the church?

A FEMALE VOICE: We do.

THE COURT: Okay, who? Is there no "I?"

MS. ART: I do.

THE COURT: And who is that?

MS. ART: Susan Art.

THE COURT: Okay, Miss Art. And there are some other—okay, go ahead.

MR. JOHNSON: Yes, your Honor. In the event that the defendant should breach the agreement, she agrees: That the Court may, upon proof of her breach, enter a judgment and an injunction against her immediately; That she will be responsible to pay for the court costs and fees to secure such a judgment—

THE COURT: And that will be attorn—

MR. JOHNSON: —and injunction.

THE COURT: —attorneys' fees.

MR. JOHNSON: That's right, your Honor. The parties would further agree: That they would issue mutual general releases from both sides; That the releases would cover not only the subject of this lawsuit, but Miss Curry's employment and its termination by the school as well.

THE COURT: Okay. And, Miss Curry, you agree to those terms?

THE DEFENDANT: Yes.

THE COURT: Okay. And, Miss Art? (Comment sotto voce.)

MS. ART: I do.

THE COURT: Yes. Oh, on behalf of the church. Okay. So, we have agreement on that term.

MR. JOHNSON: Further, your Honor, the parties agree that the plaintiff will not contest a claim for unemployment if the defendant chooses—

THE COURT: Unemployment benefits?

MR. JOHNSON: Benefits. That's right, your Honor. And that is the . . .

THE COURT: And Miss Art—what is it?

MS. ART: A-r-t.

THE COURT: Oh, A-r-t. Okay, Miss Art, do you agree to that?

MS. ART: I agree to that on behalf of the church.

THE COURT: Okay. And, Miss Curry, of course, you agree to those terms?

THE DEFENDANT: Yes.

THE COURT: Okay.

MR. JOHNSON: Your Honor, we wanted the—

THE COURT: And what else? Is there another—

MR. JOHNSON: Well, we wanted to recognize, your Honor, that we have to reduce this to writing and that Mr. Lee has to do some calculations to confirm what we believe will be the case—

THE COURT: Okay.

MR. JOHNSON: —as to the unemployment benefits.

MR. LEE: Right.

MR. LEE: We would take a week to do those calculations—

THE COURT: Yes.

MR. LEE: —and then assure us, ourselves, that—of what we are agreeing to.

THE COURT: Okay.

MR. JOHNSON: And our agreement, Judge, is that all the terms we have just listed would apply during that—

THE COURT: Yes.

MR. JOHNSON: —that week.

THE COURT: Well, we have a binding agreement notwithstanding the fact that the agreement has not been reduced to writing, because, if that is all that needs to be done, that ministerial job of reducing it to writing, the parties have reached agreement and the case will be dismissed under a stipulation of dismissal with these terms incorporated within the stipulation. I am going to set a status call in two weeks to see if we have all the documentation and whether this case can then be sent back to Judge Bucklo for her to sign the dismissal order.

MR. JOHNSON: Actually, it would be to Judge Aspen. Judge Bucklo was simply acting as emergency judge that day.

THE COURT: Okay. Okay.

MR. LEE: And I just wanted to reiterate that the week that we're taking is, in some sense, substantive—

THE COURT: Yes.

MR. LEE: —just to make sure that the numbers that were contemplated—

THE COURT: Now, here—

MR. LEE: —check out.

(Tr. 3–7).[2]

## II. *ANALYSIS*

The issue before the court today is whether the parties reached a binding oral agreement at the hearing on September 14, 1995. After a careful review of the transcript of the September 14, 1995 proceedings, we find that an oral agreement was indeed reached, and thus we will grant plaintiff's motion to enforce the settlement agreement. We also find that since no material terms of the agreement are in dispute, it being found to be sufficiently definite and certain, there is no need to conduct an evidentiary hearing to determine whether the settlement agreement is complete.

A district court has the inherent or equitable power to enforce a settlement agreement in a case before it. *Wilson v. Wilson,* 46 F.3d 660, 664 (7th Cir.1995). *See also Core–Vent Corp. v. Implant Innovations, Inc.,* 53 F.3d 1252, 1259 (Fed.Cir.1995); *Murchison v. Grand Cypress Hotel Corp.,* 13 F.3d 1483, 1486 (11th Cir.1994); *Brewer v. National Railroad Passenger Corp.,* 256 Ill. App.3d 1083, 194 Ill.Dec. 834, 837, 628 N.E.2d 331, 334 (1993), *appeal allowed,* 155 Ill.2d 562, 198 Ill.Dec. 540, 633 N.E.2d 2 (1994). Oral settlement agreements that are made in open court and on the record are also enforceable by a district court. *Wilson,* 46 F.3d at 667. *See also Petty v. Timken,* 849 F.2d 130, 133 (4th Cir.1988).

A party who freely enters the judicial process always assumes the risk that the final result will not be satisfactory. *Petty,* 849 F.2d at 133. Consequently, defeated expectations do not entitle a party to repudiate promises made to opposing parties or the court. *Id.* "A unilateral mistake or misunderstanding is not sufficient to compel recision of a settlement agreement where counsel for the parties had accepted the settlement terms on behalf of their clients." *Brewer,* 194 Ill.Dec. at 838, 628 N.E.2d at 335.

District courts may only enforce completed settlement agreements—those which the parties have reached agreement on all material terms. *Brock v. Scheuner Corp.,* 841 F.2d 151, 154 (6th Cir.1988). A contract analysis, using Illinois law, must occur to determine whether in fact a contract to settle was formed. *Wilson,* 46 F.3d at 666. Oral agreements to settle litigation are enforceable "as long as there is clearly an offer and acceptance of the compromise and a meeting of the minds as to the terms of the agreement." *Brewer,* 194 Ill.Dec. at 838, 628 N.E.2d at 335. Oral agreements are enforceable even if the terms have not yet been reduced to writing. *Wilson,* 46 F.3d at 667. The plaintiff has the burden of establishing the existence of these elements in order for it to prevail on its motion to enforce the settle-

---

**2.** Reference to the September 14, 1995 hearing are cited as ("Tr. —"). The transcript cited reflects agreed changes as stipulated by the parties.

ment agreement. *Schaap v. Executive Industries, Inc.*, 760 F.Supp. 725, 726 (N.D.Ill. 1991).

 The defendant argues that the agreement was incomplete because no reasonable person would have recognized the agreement's language as "reflecting a completed agreement" (Defendants Amended Brief in Opposition to Plaintiffs' Motion and Renewed Motion to Enforce Oral Settlement Agreement ("Def.Mem.") at 9). Plaintiff argues that the "four corners" of the transcript from the September 14 hearing reveal that the parties did in fact reach a complete, binding agreement in resolution of their lawsuit. We find that the record supports plaintiff's view of the proceedings. At the hearing, Mr. Johnson, the Church's attorney, was prompted by the court to articulate the terms of the agreement. After each term was read, the parties orally agreed to that term. The parties' nearly simultaneous oral consent clearly satisfied the "meeting of the minds" requirement necessary for this court to find that the parties had reached a binding agreement. (Tr. 3–6)

In addition, the transcript of the hearing reveals this court frequently declared the agreement to be "binding," a characterization which the defendant never objected to. (Tr. 3, 6, 9) If the defendant and her attorney truly believed that the purpose of the September 14 hearing was to put an incomplete and "preliminary" agreement on the record, their conduct before, during, and after the hearing spoke differently. The parties approached this court on September 14, 1995, and declared that they had reached an agreement. They understood that the sole purpose of the September 14 hearing was for the parties to place the *settlement agreement* on the record. The court began the hearing by explaining to the parties the purpose of the hearing by stating, "I understand that the parties now have reached an agreement whereby this matter can be amicably resolved between you two ... resolving a case such as this is in the best interest for everybody, because you get this behind you and you go on with your life" (Tr. 2). After the plaintiff and defendant orally agreed to all the elements of the settlement agreement,

the court again commented, "Well, we have a binding agreement ..." (Tr. 6). At the close of the hearing, the court remarked, "With that, again, I want to congratulate all the parties. This [case] now will be behind you ..." (Tr. 9). The defendant and her attorney never objected to any of the court's numerous declarations that the agreement was final and binding. In addition, defendant's attorney also never stated on the record that the parties had not yet reached an agreement, or that the agreement's existence was conditioned upon an event happening in the future. Moreover, no one said that if the defendant was not entitled to unemployment benefits, the agreement would no longer be valid. In fact, Mr. Lee himself authorized the court to "... enter the dismissal." (Tr. 7).

 Defendant wants the court now to believe that any agreement reached during the hearing was preliminary and incomplete because a "material element" of the agreement failed through no fault of her own—the legal possibility of payment of unemployment benefits. Defendant claims she was willing to accept the Church's proposal *as long as* $5,000 in unemployment benefits was *legally* available to her. While an agreement's existence is conditioned on the existence of all the material elements of that agreement, in this case the transcript of the hearing does not reveal that the parties' agreement was in any way conditioned on the existence of this $5,000 benefit term. During the hearing, Mr. Johnson told the court that "Mr. Lee has to do some calculations to confirm what we believe will be the case as to the unemployment benefits" (Tr. 6). Mr. Lee then said, "We would take a week to do those calculations and then assure us, ourselves ... of what we are agreeing to" (Tr. 6). Later, Mr. Lee told the court, "I just wanted to reiterate that the week that we're taking is, in some sense, substantive ... just to make sure that the numbers that were contemplated ... check out" (Tr. 7). Nowhere in this language is there any description of what Mr. Lee planned to "calculate" that week. What is patently clear from the record is that the *possibility* of payment was not necessary to complete the agreement. Even if we take

the defendant at her word and assume, arguendo, that Mr. Lee was calculating the unemployment benefits the defendant was legally entitled to, at no time did Mr. Lee, or the defendant, express that without the guaranteed legal availability of unemployment benefits, the parties had no agreement. The Church never agreed that their undertaking was somehow contingent upon defendant's success or her being legally entitled to receiving unemployment benefits.

Instructive to us is the case of *Wilson v. Wilson,* which, like the instant case, involved parties that had reached a tentative settlement out of court, then appeared in court to confirm the specifics of the agreement. *Wilson,* 46 F.3d at 665. In the present case the parties, simultaneously, appeared in open court to finalize a settlement agreement arrived at in court chambers. In *Wilson,* the court held that the proper time for a party to challenge the existence of a settlement agreement is when the parties are before the court. *Id.* at 665. In the present case neither party attempted to challenge the settlement agreement when they appeared in open court; instead, each party agreed to the terms of the settlement agreement, on the record, as elicited by the court. (Tr. 5–6).

We find that the "calculations" to which Mr. Lee referred were neither a material element of the agreement or a modification of the terms of the agreement. The record makes it clear that the Church only agreed *not to contest* defendant's claim for unemployment benefits if she chose to pursue them—nothing more, nothing less. Reading anything more into the agreement ignores the clarity of the agreement concerning this term. Indeed, the defendant's intentions in now opposing this motion are clear—she wants money for her silence. (Def.Mem. at 8) Since defendant learned that unemployment benefits were not available to her and that the terms of the agreement did not provide her with any compensation, she attempts to construe the agreement into either being incomplete and preliminary, or to find a reading in which the Church is somehow a guarantor of her unemployment benefits. Looking to the unambiguous record in this case, this court can only conclude that Mr.

Lee's on the record discussion of these "calculations" was merely an expression of hope that his client would somehow be entitled to unemployment benefits, since he admittedly had some doubts whether the defendant would even qualify for benefits due to the fact that the Church has never contributed to the fund. (Def.Mem. at 9) The later concern for "calculations had no effect' on the objective meaning to the agreed terms and in this regard, even the defendant notes that the objective meaning of the language chosen by the parties is controlling. (Def.Mem. at 8) *FDIC v. W.R. Grace & Co.,* 877 F.2d 614, 621–22 (7th Cir.1989) This court simply cannot accept the defendant's claim that the agreement was incomplete simply because she later learned she was not eligible to receive unemployment benefits.

The defendant further proposes the arguments that the court should believe that the discussions, on the record involving the "calculations," which immediately followed the parties' recitation of the terms, demonstrated that the terms were too indefinite to be a "complete" settlement agreement. Again, we disagree. A close analysis of the transcript itself reveals that the plaintiff's mentioning of Mr. Lee's need to do some "calculations to confirm what we believe will be the case" and Mr. Lee's desire to make sure the numbers contemplated "check out," while ambiguous, does not modify or comprise any term of the agreement reached on the record on September 14. It bears mentioning again: the parties had only agreed the Church would not contest a claim for unemployment benefits. That was the extent of the agreement regarding unemployment benefits. There was no monetary qualification to that promise.

The record in this case is absent any mention of calculations to be done in order for the Church, in meeting its obligations under the agreement, to refrain from contesting a claim by defendant for unemployment benefits—just the opposite seems true—either it contests a claim and breaches the agreement, or does not contest a claim and complies with the agreement. We find the comments by defendant's attorney, coming after the affirmation of the terms of the agreement, simply

his method of expressing some hope that the agreement would work out well for his client. His disappointment in the apparent result will, nonetheless, not undermine the existence of the contractual agreement between the parties. *Petty*, 849 F.2d at 133. Accordingly, we hold that the terms articulated at September 14, 1995 hearing formed a binding agreement between the parties. Since the agreement also included dismissal of the action, that aspect likewise will be accorded.

### III. CONCLUSION

For the foregoing reasons, it is hereby ordered that plaintiff's motion to enforce the oral settlement agreement reached on September 14, 1995, before the court, is hereby GRANTED. The court finds that the parties are bound to the terms of such agreements as expressed in open court on September 14, 1995. It is further ordered that this case is hereby DISMISSED.