Claire E. DOI, Plaintiff–Appellant,

v.

**HALEKULANI CORPORATION,
dba Waikiki Parc Hotel,
Defendant–Appellee.**

No. 00–16447.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 31, 2001

Filed Jan. 14, 2002

Earle A. Partington (argued), Honolulu, Hawaii, for plaintiff-appellant Doi.

Ronald Y.K. Leong, Randall Y. Yamamoto, Lani Narikiyo (argued), & Lester M.H. Goo, Watanabe, Ing & Kawashima, Honolulu, Hawaii, for defendant-appellee Halekulani Corporation.

Before: THOMPSON, O'SCANNLAIN, and BERZON, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

In this employment discrimination litigation, we must decide whether the district court correctly enforced a negotiated set-

tlement without holding an evidentiary hearing where, after the terms were placed on the record and agreed to by all parties in open court, the plaintiff refused to execute a written agreement.

I

This appeal began as a discrimination lawsuit, which Claire Doi filed against her employer, the Halekulani Corporation, doing business as the Waikiki Parc Hotel in Honolulu, Hawaii on December 16, 1998. Doi's complaint alleged, *inter alia,* claims of sex and race discrimination in violation of Title VII, age discrimination in violation of the Age Discrimination in Employment Act of 1967 (ADEA), and various state law claims. After Halekulani filed an answer to the complaint, the parties entered into settlement negotiations.

It appears that the district court was involved in facilitating settlement discussions, which ultimately proved fruitful. On May 10, 2000, counsel for both Doi and Halekulani—as well as both Doi herself and a representative of Halekulani—came into open court to announce that the parties had agreed to settle the case and to place the terms of the settlement on the record. The relevant portions of the ensuing colloquy transpired as follows:

> THE COURT: Okay. So, the parties had off the record discussions with me and have reached a settlement and I will let defense counsel put the terms of the settlement on the record.
>
> DEFENSE COUNSEL: Thank you, Your Honor. My understanding is that Halekulani Corporation will pay the sum of $15,000 to the plaintiff. The settlement draft will be made payable to Claire Doi and Charles Brower, her attorney. In exchange for that there will be a stipulation to dismiss this case with prejudice as well as a release and indemnity agreement executed by the plaintiff. In addition, the release agreement will specify that Ms. Doi will resign from her job with the Halekulani [sic] effective upon the filing of the stipulation for dismissal with prejudice. She also agrees not to reapply to any related entities of Halekulani Corporation, and those entities will be listed and set forth in the release document. The release will also specify that there is a mutual confidentiality provision, which will be agreed upon by counsel, as well as a mutual non-disparagement agreement. There will be no admission of liability on the part of Halekulani Corporation or any defendant by virtue of this settlement and that will be specified in the release as well.
>
> Finally, the payment of $15,000 will also be memorialized by a Form 1099 issued by Halekulani, and we will agree to work with counsel for plaintiff in terms of drafting language with regard to the consideration of $15,000 and its applicability.
>
> PLAINTIFF'S COUNSEL: All right.
>
> THE COURT: Is that agreed to?
>
> PLAINTIFF'S COUNSEL: Yes, Your Honor. I understand that those are the terms of the settlement.
>
> THE COURT: Can I have you also, Ms. Doi, state that you do agree to these terms?
>
> PLAINTIFF: After I see the documents I—
>
> THE COURT: Well—
>
> PLAINTIFF'S COUNSEL: The terms are—
>
> THE COURT: The terms, as stated right now, do you agree to those?
>
> PLAINTIFF: I stated.
>
> THE COURT: You do agree?
>
> PLAINTIFF: Yeah.
>
> THE COURT: Okay. And—
>
> DEFENSE COUNSEL: Yes, I do.

The parties also stipulated that both the agreed payment and the stipulation to dismiss would be delivered to the Judge's chambers by Friday, May 12, at 4:00 p.m. Accordingly, Halekulani agreed to prepare settlement documents (including a stipulation to dismiss) memorializing the agreement entered into in open court. All seemed copacetic.

When Friday arrived, however, the agreement began to unravel. Four o'clock passed, and the district court did not receive the stipulation to dismiss. Concerned, the court convened a teleconference with the parties. At 4:25 p.m. lawyers for both Doi and Halekulani appeared before the district court via telephone. During that teleconference, plaintiff's counsel stated that he had received a facsimile from Doi Friday morning, asking him to fax her a copy of the paperwork when he received it from Halekulani. He did so. Doi then called him, just before noon, stating that she needed "more time to review documents; can't get it in by 4:00; please call." Plaintiff's counsel attempted three times to return the call, and even sent plaintiff a facsimile asking her to contact him, but to no avail. Plaintiff's counsel did not know why Doi had not gotten back to him, but stated unambiguously that he believed that the settlement documents were satisfactory, and more importantly, that the documents correctly reflected the terms placed on the record.

Defense counsel offered an explanation for Doi's peculiar behavior. Specifically, he informed the court that Doi had sent Halekulani a letter via facsimile on Friday morning. The letter, directed to the president of Halekulani, proposed new settlement terms—terms inconsistent with those placed on the record.[1] Plaintiff's counsel was surprised to learn that Doi had sent the letter.

Understandably frustrated, the court told the attorneys that it would invite Halekulani to file a motion to enforce the settlement in accordance with the agreement placed on the record if Doi failed to execute the settlement documents by the following Monday morning. The court indicated that the motion would be given an expedited hearing and warned that, "unless [Doi] tells me something I don't know at present, she doesn't have a ground that I know of to change her mind." The settlement agreement placed on the record, the court admonished, "was the binding agreement [Doi] made." The court also made clear that Doi would have an opportunity to "submit something in writing before the hearing, or she can attend the hearing and place on the record what her position is in response to the motion." The court cautioned that Doi faced sanctions, in the form of having to pay any attorney's fees that Halekulani incurred in bringing the motion to compel settlement, if the motion were granted.

The court did not receive a signed settlement agreement by the Monday deadline; accordingly, Halekulani filed a motion to compel settlement. On Tuesday, May 16, 2000, the court held a hearing on that motion. Doi appeared for herself and requested a 30–day continuance in which to hire a new lawyer. She also complained that she "didn't make any agreement in writing before the settlement conference on Wednesday that I wanted to settle." The court patiently explained to Doi that

---

1. Because neither party filed this letter before the district court, it is not in the record on appeal. However, an affidavit by counsel for Halekulani confirms that "on May 12, 2000," his office "received a copy of a letter sent by Claire Doi to the President of HALEKULANI dated May 12, 2000 wherein she offers settlement terms which are contrary to the terms agreed upon on May 10, 2001."

[a]n agreement does not have to be in writing to be binding. An oral agreement is binding. . . .

We had a settlement conference at which the attorneys for both sides said there was an agreement, and then I made you also say whether you agreed with that—those terms or not, and you said you did. So if the basis of your concern is, "Gee, I didn't sign a document, that means I never agreed," I will tell you that you're wrong on the law. An oral agreement is a binding agreement.

Nonetheless, the court granted the continuance, setting a hearing date of July 3 and a deadline of June 15 for the filing of any papers.

On June 15, 2000, Doi—via a new lawyer (her second)—filed an opposition to Halekulani's motion to compel settlement.[2] Doi also filed a paper styled "Plaintiff's Opposition to Proposed Sanctions," which stated only that she "propose[d] to testify as to sanctions and the merits at the hearing scheduled for July 3, 2000."

On June 30, 2000, the court faxed its inclined ruling on Halekulani's motion to compel settlement to the parties. The court indicated that it planned to grant the motion, and to impose sanctions on Doi for her unjust refusal to sign the settlement documents. The court heard argument on the motion on July 3, 2000. At argument Doi's new lawyer reversed the position that Doi had previously taken, insisting repeatedly that the settlement documents were not, in fact, consistent with the agreement previously placed on the record. Despite her prior indication that she would do so, Doi did not testify. The court was not persuaded; it granted Halekulani's motion to enforce the settlement.

The court then turned to the issue of sanctions. Again, although she had previously said she would testify, Doi declined to do so. Instead, her attorney stated on her behalf:

Insofar as any sanctions are concerned, I want to defer to the court on that. I understand the court's ruling. I understand the court's position. I understand the defendant's frustration in wanting to get the case over with. . . . So I don't like to—on matters like this, purely discretionary matters, I don't like to tell the court what my feelings are because I'm not certain of what actually happened. So I need to defer to the court on that.

The court decided that a sanction of $1,000, which was far less than the attorney fees incurred by Halekulani in bringing the motion to compel, was warranted.

Judgment was entered in accordance with the court's amended order compelling settlement and sanctioning Doi. The judgment dismissed the case with prejudice. This timely appeal, filed by Doi's third lawyer in these proceedings,[3] followed.

## II

We first examine whether the district court correctly enforced the settlement agreement. We review a district court's enforcement of a settlement agreement for abuse of discretion. *See Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987). Doi argues that the court erred in enforcing the agreement because, in fact, she did not enter into any binding settlement agreement. Alternatively, she contends that if she did enter into a binding agreement, the district court erred by enforcing various terms of the written settlement

---

**2.** Pursuant to a subsequent motion by Halekulani, that document was sealed because it contained confidential material.

**3.** Doi apparently obtained her third lawyer at some point after the entry of judgment.

agreement that were not among those terms agreed to in open court. We address each argument in turn.

### A

Doi first contends that the district court erred in finding that she had reached a binding agreement with Halekulani.

### 1

■ To begin, Doi correctly points out that under Hawaii law an attorney may only settle a case if the client gives written authorization to do so. *See* Haw.Rev.Stat. § 605–7. This, however, is irrelevant; certainly, Doi herself had the power to enter into a binding agreement. The question, then, is whether she did so.

■ After the material terms of the agreement were read into the record as set forth above, the court engaged Doi in the following colloquy:

Q: Can I have you also, Ms. Doi, state that you do agree to these terms?

A: After I see the documents I—

.    .    .    .    .

Q: The terms, as stated right now, do you agree to those?

A: I stated.

Q: You do agree?

A: *Yeah.*

(emphasis added). Doi thus agreed to the terms stated in open court: whatever its grammatical flaws, there is nothing ambiguous about the response, "yeah." *See* Merriam–Webster's Collegiate Dictionary 1371 (10th ed. 1996) (defining "yeah" as "yes"); *see also* Fowler's Modern English Usage 860 (R.W. Burchfield ed., 3d ed. 1996) (explaining that "yeah," which is "[t]he conventional spelling of a shortened form of *yes*," "occurs in the spoken word

with greater frequency than is realized by many standard speakers.").

### 2

■ Doi next argues that, her affirmative response to the question of whether she agreed to the terms as stated notwithstanding, she did not actually intend to be bound until there was a writing. She points to her having said "After I see the documents" in her colloquy with the court. We find no merit in this argument.

In support of her argument, Doi relies principally upon *Ciaramella v. Reader's Digest Ass'n, Inc.*, 131 F.3d 320(2d Cir. 1997). In *Ciaramella* the parties, Ciarmella and RDA, traded several drafts of a settlement agreement. Allegedly Ciarmella's lawyer stated, with regard to one of the later drafts, "We have a deal." *Id.* at 321. Ciarmella, however, refused to sign the proposed agreement. RDA moved to compel settlement, and the district court granted the motion. *Id.* The Second Circuit reversed, however, finding that Ciarmella never intended to enter into a binding agreement.

*Ciaramella* is easily distinguished from this case. In *Ciaramella*, all of the discussions between the parties regarding settlement took place outside of court. Thus, the Second Circuit found that the district court should have examined various factors in order to determine whether these discussions *actually evidenced* an intent to be bound. *Id.* at 323. In this case, however, the settlement was negotiated in off-the-record discussions with the court. The parties then went into open court and announced that there was a settlement. The settlement contained agreement as to all material terms, which terms were put on the record.[4] And in response to direct

4. Indeed, Doi's first lawyer specifically stated on the record that the written agreement Doi refused to sign was in accord with the terms

of the settlement agreement read into the record.

questioning by the court, Doi stated that she agreed with the terms. Unlike in *Ciaramella*, then, there was no need for the court to engage in factual inquiries to determine whether Doi agreed to be bound by the terms of the agreement. Any question as to Doi's intent to be bound was answered when she appeared in open court, listened to the terms of the agreement placed on the record, and when pressed as to whether she agreed with the terms, said "yeah." *See Sargent v. HHS*, 229 F.3d 1088, 1090 (Fed.Cir.2000) (holding, despite appellant's allegations that he was not bound by a settlement agreement because he had not signed it, that "it is well-established that an oral agreement is binding on the parties, particularly when the terms are memorialized into the record"); *see also In re Christie*, 173 B.R. 890, 891 (Bankr.E.D.Tex.1994) ("An agreement announced on the record becomes binding even if a party has a change of heart after [she] agreed to its terms but before the terms are reduced to writing.").

### 3

■ Doi next asserts that before the district court decided to enforce the settlement agreement, it should have at least held an evidentiary hearing to determine whether such an agreement existed, and if so, what its terms were. In support of this argument, Doi cites *Callie*.

*Callie*, of course, stands for the unremarkable proposition that "the district court may enforce only *complete* settlement agreements.... Where material facts concerning the *existence* or *terms* of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing." *Id.* at 890 (citations omitted). *Callie*, however, is easily distinguished from this case. In *Callie*, the alleged settlement agreement arose from a series of letters. The appellants sent a letter to the appellees on June 9, 1986 seeking "to confirm" terms of a negotiated settlement.

On June 10, counsel for the appellees sent its own proposed stipulation and judgment. *Id.* The appellants, however, refused to execute the proposed stipulation and judgment because it found them unacceptable. The appellants moved to enter judgment against the appellees in accordance with their June 9 letter; the appellees objected, arguing that there was no agreement or, in the alternative, that there were material factual disputes as to the validity and scope of the agreement. The district court granted the motion. *Id.* This court, however, concluded that the district court abused its discretion by not conducting an evidentiary hearing because the appellants raised factual issues that were material for determining the validity and scope of the settlement agreement. *Id.*

This case, in contrast, featured no analogous series of proposals and counter-proposals made in letters. Instead, the parties simply voluntarily appeared in open court, and there announced that they had settled. They also placed the material terms of the settlement agreement on the record. These terms included:

- Halekulani would pay $15,000 to the plaintiff;

- Doi would stipulate to dismiss the case with prejudice, as well as execute a release and indemnity agreement;

- Doi would resign from her job with the Halekulani effective upon the filing of the stipulation for dismissal with prejudice, and agree not to reapply to any related entities of Halekulani Corporation;

- The release would also contain a mutual confidentiality provision, to be agreed upon by counsel, as well as a mutual non-disparagement agreement.

- The release would further specify that there would be no admission of liability on the part of Halekulani Corpo-

ration or any defendant by virtue of this settlement; and

● The payment of $15,000 would be memorialized by a Form 1099 issued by Halekulani, whose exact terms would be worked out by counsel.

Thus, there was no need for an evidentiary hearing on whether an agreement existed, or what its terms were: the parties dispelled any such questions in open court. *Cf. Vari–O–Matic Machine Corp. v. New York Sewing Machine Attachment Corp.*, 629 F.Supp. 257, 259 (S.D.N.Y.1986) ("[I]n this case since both parties made representations to the court that agreement had been reached, there can be no factual dispute that a settlement had been consummated, and the court is empowered summarily to require the parties to comply with their representations without holding a hearing.").

### B

Finally, Doi contends that the district court erred by enforcing various terms of the written settlement agreement that were not among those terms agreed to in open court. Specifically, she attacks two provisions of the written agreement prepared by Halekulani as not being "fully spelled out at the settlement hearing."

These include (1) the list of Halekulani entities at which Doi agreed not to work, and (2) the scope of the confidentiality agreement.

Both of these provisions of the written agreement, however, are in full accord with the terms of agreement stated in open court. With respect to the Halekulani entities: in open court, defense counsel clearly stated that under the settlement, Doi "agrees not to reapply to *any related entities* of Halekulani Corporation, and those entities will be listed and set forth in the release document." (emphasis added). The written agreement merely spells out these entities.[5]

Similarly, with respect to the confidentiality provision, defense counsel stated in open court that the release to be signed by Doi would "also specify that there is a mutual confidentiality provision, which will be agreed upon by counsel ...." The written agreement contains a very standard release clause, and there is no reason to think that it represents any overreaching by Halekulani.[6] In any event, Doi's attorney confirmed in the May 12 telephone conference with the court that the written agreement was consistent with

---

**5.** *See* Settlement Agreement¶ 10 ("DOI agrees that she shall [sic] never again be employed by, and shall never apply for, be hired by or otherwise seek employment with, HALEKULANI, or any parent, subsidiary, affiliate or entity related to HALEKULANI, including MFD (Hawaii) Inc., MFD 700 Bishop Inc., MFD Partners LLC, and/or their subsidiaries, affiliates, successors and/or assigns."). Doi does not contend that any of these companies are not related entities of Halekulani.

**6.** *See* Settlement Agreement¶ 12 ("The PARTIES agree that the terms and conditions of this AGREEMENT are confidential and that they will not disclose the terms and conditions of this AGREEMENT except as provided herein. The terms and conditions of this AGREEMENT shall not be disclosed in any

form by DOI or HALEKULANI or anyone on her/its behalf except as provided in this Paragraph. DOI and HALEKULANI may disclose the terms and conditions of this AGREEMENT to her/its attorneys, accountants, tax consultants and/or financial advisors to perform necessary legal, accounting, tax and/or financial services, provided that he/she/they agree to maintain the confidentiality of all the information disclosed. DOI and HALEKULANI also may disclose the terms and conditions of this AGREEMENT if required to do so by law or in a proceeding to enforce this AGREEMENT. HALEKULANI also may disclose the terms and conditions of this AGREEMENT to its Board, officers, directors and/or those other employees who need to know.").

the terms of the agreement placed on the record in open court.

Accordingly, we conclude that Doi has not shown that any of the terms of the written agreement prepared by Halekulani were inconsistent with the terms of the agreement made on the record in open court.

### C

To summarize, then, we are persuaded, as the district court was, that Doi entered into a binding settlement agreement in open court. Further, Doi has failed to demonstrate how any of the terms of the written settlement agreement are in discord with the terms of the agreement stated in open court. We therefore conclude that the district court did not abuse its discretion in enforcing the written settlement agreement.

### III

■ Finally, we review the $1,000 sanction imposed against Doi for her refusal to sign the written settlement agreement. Our review is limited; we examine a district court's imposition of sanctions pursuant to its inherent power for an abuse of discretion. *See Gomez v. Vernon,* 255 F.3d 1118, 1134 (9th Cir.2001).

■ We note as an initial matter that it is not clear that Doi preserved any challenge to the sanction for appeal. In the district court, even though Doi had the opportunity to present evidence or argument in opposition to the sanction,[7] she did not do so. Indeed, through her counsel Doi stated that she would "defer to the court" on the issue of sanctions. As this court has explained, "[i]t is well-established that an appellate court will not consider issues that were not properly raised before the district court.... It follows that if a party fails to raise an objection to an issue before judgment, he or she waives the right to challenge the issue on appeal." *Slaven v. American Trading Transp. Co.,* 146 F.3d 1066, 1069 (9th Cir.1998) (citation omitted).

■ Regardless, however, Doi offers no persuasive argument that the court erred in sanctioning her. Doi raises but one objection to the sanction on appeal: she contends that "If the district court erred in ordering the enforcement of the oral 'settlement agreement', then there was no basis for the district court to impose a sanction upon Doi and the sanction order must be reversed accordingly." But as discussed above, the district court did not err in enforcing the settlement agreement. Because this is the only challenge brought against the sanction, and it is without merit, she has failed to show that the district court abused its discretion by imposing the sanction. *Cf. Greenwood v. FAA,* 28 F.3d 971, 977 (9th Cir.1994) (en banc) ("We will not manufacture arguments for an appellant....").

---

7. Doi had ample warning that she faced sanctions, but failed to act to avoid the sanctions. In the May 12, 2000 telephone conference, the district court warned Doi's then-counsel Brower that Doi would likely be assessed Halekulani's attorney's fees if she failed to execute the written settlement agreement memorializing the oral argument put on the record. The court ordered Brower to inform Doi of this possible sanction, and he did so. Nonetheless, Doi refused to sign the agreement.

The day before Halekulani's motion to compel (which included a request for sanctions) was to be heard, the district court contacted Doi and informed her that it was inclined to sanction Doi in the amount of $1000 for her refusal to comply with the oral settlement agreement. The court specifically instructed Doi to come to the hearing prepared to address the proposed sanction, and made clear that she should present any evidence opposing the sanction at that hearing. Nonetheless, although she attended the hearing, Doi—after initially stating that she would testify—declined to present any evidence in her defense.

We therefore find no abuse of discretion in the district court's award of sanctions.

## IV

In the typical case when one party seeks to enforce a settlement agreement against another, parties exchange phone calls and e-mails, and perhaps even drafts of a settlement agreement, outside of court. *See, e.g., Ciaramella v. Reader's Digest Ass'n, Inc.,* 131 F.3d 320 (2d Cir.1997). At some point in the process, one party concludes that a final agreement has been reached; the other party, however, disagrees. We can understand how a party could dispute having made a binding agreement in such a case.

This, however, is not the typical case. Rather, here, the plaintiff made a binding settlement agreement *in open court:* when read the terms of the agreement, and asked if she agreed with them, Doi simply responded, "yeah." At a time where the resources of the federal judiciary, and this Circuit especially, are strained to the breaking point, we cannot countenance a plaintiff's agreeing to settle a case in open court, then subsequently disavowing the settlement when it suits her. The courts spend enough time on the merits of litigation; we need not (and therefore ought not) open the flood gates to this kind of needless satellite litigation.

Thus, we cannot say that the district court abused its discretion by finding that Doi's response in open court, after the terms of the settlement agreement were recited, constituted a binding agreement to settle. And because Doi has not demonstrated that the written agreement prepared by Halekulani was inconsistent with the terms of the agreement stated on the record, in open court, we conclude that the district court did not abuse its discretion in enforcing the agreement. Nor did the district court abuse its discretion when it

sanctioned Doi for her unreasonable failure to sign the written agreement.

**AFFIRMED.**