In re Donald L. CLAWSON and Debra A. Clawson, Debtors.

Donald L. Clawson II and Debra A. Clawson, Plaintiffs,

v.

Indymac Bank; and Quality Loan Service Corp., Defendants.

Bankruptcy No. 08–45900.
Adversary No. 09–4045 AN.

United States Bankruptcy Court,
N.D. California,
Oakland Division.

Oct. 2, 2009.

David M. Sternberg, David M. Sternberg and Assoc., Walnut Creek, CA, for Debtors.

Kristin A. Schuler–Hintz, McCarthy and Holthus, San Diego, CA, for Defendants.

## ORDER ENFORCING SETTLEMENT

RANDALL J. NEWSOME, Bankruptcy Judge.

This chapter 7 adversary proceeding is before the court to determine whether an enforceable settlement was reached among the parties to this dispute. For the reasons stated below, the court finds that such a settlement was reached, and that

the lender in this case, IndyMac Federal Bank FSB [1] (hereafter referred to as Indy-Mac) and the loan servicer, Quality Loan Service Corp. (hereafter referred to as Quality), have engaged in bad faith and willful misconduct warranting the imposition of sanctions pursuant to this court's inherent power.

The material facts leading to this result are virtually undisputed.[2] The debtors in this bankruptcy case own a residence at 107 Canfield Court in Brentwood, California. This adversary proceeding, filed on January 29, 1009, claims that IndyMac improperly reset the monthly payment on the debtors' mortgage and willfully violated the automatic stay under 11 U.S.C. § 362(k). At the March 25, 2009 initial status conference in this case, counsel for the plaintiffs, David Sternberg, stated that the parties were trying to settle, and requested that the matter be continued. No one appeared for IndyMac or Quality. In light of the fact that neither defendant had filed an answer or otherwise pled, the court directed the clerk to enter a default against both defendants. That entry was duly filed and served on all parties on March 27, 2009. Adv. Pro. No. 09–4045 AN, Docket Nos. 8 and 9.

In furtherance of the settlement between the parties and apparently at the request of the defendants (see March 25, 2009 transcript, pg. 2, Adv. Pro. No. 09–4045 AN, Docket No. 33), the plaintiffs sought and obtained an order of abandonment of the property. Plaintiffs' Exh. 16. IndyMac also acted in recognition of the settlement by cancelling a trustee sale of the debtors' residence. Plaintiff's Exh. 8.

That sale was set after the bank obtained relief from the automatic stay pursuant to an order signed on January 6, 2009. Case No. 08–45900N, Docket No. 18.

The court convened a continued status conference on April 29, 2009, at which again no appearance was made by or on behalf of the defendants. Sternberg reported that as of the prior evening, the parties had finalized a settlement. He further stated that he expected to receive a written settlement agreement from counsel for the defendants the previous evening, but it had not yet arrived. April 29, 2009 transcript, pr. 3, Adv. Pro. No. 09–4045 AN, Docket No. 30. Pursuant to an order entered on May 1, IndyMac was directed to file an executed settlement agreement by May 6, 2009, or the court would issue an order to show cause why it should not be sanctioned for failing to appear at the April 29 and March 25 status conferences. Adv. Pro. No. 09–4045 AN, Docket No. 10.

In the mean time, Sternberg received the promised settlement agreement from counsel for the defendants, Kristin A. Schuler–Hintz. By letter dated April 29, Sternberg requested that certain changes and additions be made to the agreement, most notably including the following provision: "Each party warrants that they have authority to enter into this Agreement." Plaintiffs' Exh. 18.

An executed settlement agreement was not filed by the May 6th deadline imposed by the Court. Instead, on May 6 Schuler–Hintz filed a "Status Report on Stipulation Resolving Adversary Proceeding," in

---

1. Although OneWest Bank apparently purchased substantially all of IndyMac's assets effective March 19, 2009 (September 16, 2009 transcript, pg. 11, Adv. Pro. No. 09–4045 AN, Docket No. 29), OneWest has never made a formal appearance in this case.

2. Although the issue was not addressed at the September 16, 2009 hearing, the court hereby admits all of the plaintiffs' exhibits. No exhibits were tendered by the defendants, and the defendants' list of exhibits stated that they "have no other Exhibits than those referenced by the Plaintiffs." (Court Exh. 1, List of Exhibits, attached hereto).

which she stated that "Counsel for Defendants has provided Plaintiff's counsel with a proposed stipulation and settlement agreement which is under review by Plaintiffs and counsel; upon approval said agreement will be submitted to Defendants for review and approval." Adv. Pro. No. 09–4045 AN, Docket No. 12.

Having failed to comply with the Court's May 1 order, on May 14, 2009 the court issued another Order to Show Cause why the defendants should not be sanctioned, and set a hearing date for June 24, 2009. On June 22 Schuler–Hintz filed a declaration in response to this order. She apologized for not appearing at the March 25 and April 29 status conferences, and attributed her absence from both conferences to calendaring errors. She also said she would be unable to appear at the June 24 conference due to a scheduling conflict. Adv. Pro. No. 09–4045 AN, Docket No. 16.

Attorney Paul Krohn specially appeared for Schuler–Hintz and IndyMac at the June 24 hearing, and reported that IndyMac had been purchased by OneWest Bank, a settlement had been drafted, and that the file had been shifted from IndyMac's loss mitigation department to OneWest's legal department. June 24, 2009 transcript, pg. 2, Adv. Pro. No. 09–4045 AN, Docket No. 34. Because of its failure to comply with the May 14 order, on June 25 the court issued an order sanctioning IndyMac/OneWest $500 payable to Sternberg, and ordered the bank to appear on August 5, 2009 and show cause why it should not be further sanctioned for failing to consummate the long-acknowledged settlement with the plaintiffs. Adv. Pro. No. 09–4045 AN, Docket No. 17.

At some unknown date, but apparently in late June, Schuler–Hintz sent Sternberg a revised settlement agreement that incorporated all of the changes Sternberg had requested in his April 29 correspondence, including the clause acknowledging that both sides had authority to enter into the settlement. Sternberg changed the effective date of the agreement to July 1, 2009, signed the agreement as amended, had his clients sign it as well, attached the first payment called for by the agreement, and sent it off to Schuler–Hintz that same day. Adv. Pro. No. 09–4045 AN, Docket No. 20.

Schuler–Hintz finally appeared at the August 5 hearing, stating that she represented IndyMac and Quality, without mentioning OneWest. When the court asked her what was going on in this matter, she announced that "unfortunately when I was told to settle the case, the person who said 'settle the case,' did not have the authority to give me that directive." When asked who told her to settle the case, she replied that "[I]t came from a conversation with one of the parties in the bankruptcy department." When asked why the court shouldn't find that person to have been cloaked with apparent authority to settle, Schuler–Hintz responded that "[b]ecause she didn't have the authority to authorize it on those terms." August 5, 2009 transcript, pgs. 3–4, Adv. Pro. No. 09–4045 AN, Docket No. 31. The court ordered that an evidentiary hearing be held, at which the officer of the bank in charge of its loan workout program be designated and present to testify. August 5, 2009 transcript, pg. 7. A written order to that effect issued on August 7, 2009, setting the evidentiary hearing for September 16, 2009. Adv. Pro. No. 09–4045 AN, Docket No. 21.

On August 13, 2009, Schuler–Hintz filed a "Notice of Testifying Witness," in which Charles Boyle, Assistant Vice President in Default Litigation was designated to testify at the evidentiary hearing. The notice fails to indicate the company at which Mr. Boyle holds this position, his involvement in this case, or any other information that would indicate that the designation com-

plied with the court's order. Adv. Pro. No. 09–4045 AN, Docket No. 22. Plaintiffs objected to the designation, noting that there was nothing to indicate that Charles Boyle had any senior management authority either at IndyMac or at OneWest. Adv. Pro. No. 09–4045 AN, Docket No. 24.

The nature of the defendants' claims in this matter took a dramatic and distressing turn at the September 16 hearing. Notwithstanding their own proposed findings of fact and conclusions of law, in which the defendants admit that the agreement signed by the plaintiffs on July 1 is a "complete settlement agreement" satisfying the requirements of Ninth Circuit law (Court Exh. 2, Conclusions of Law 1 and 2, attached hereto), Schuler–Hintz argued that the agreement was not complete, because the defendants never agreed to it. Even more astonishing, and contrary to her assertions at the August 5 hearing, Schuler–Hintz argued not merely that the persons at IndyMac who approved the agreement had no authority to do so, but instead that **no one** at IndyMac ever agreed to the terms of the July 1 agreement. At first, counsel claimed that she was simply told by someone in IndyMac's bankruptcy department to settle the case. She stated that she drafted the agreement, but never showed it to anyone at IndyMac until after Sternberg's clients signed it on July 1. September 16, 2009 transcript, pgs. 7–8, Adv. Pro. No. 09–4045 AN, Docket No. 29. But by that time, the file had already shifted to OneWest's legal department, as she later admitted. September 16 transcript, pg. 13. Her story took on different hues and shades as the hearing progressed:

> THE COURT: And nobody at IndyMac was ever made aware of any of the terms of the settlement?
> MS. SCHULER–HINTZ: Your honor, they had the proposal from Mr. Sternberg as to what he would like to settle on. And again, like I said, he sent that

over, we discussed it, they said they can't settle on those terms. I reviewed my notes. When we had a discussion a few days later about it, they said "Just settle the case." I didn't—I didn't take that to mean I was to go out and do new negotiations. I took it to mean I was supposed to settle on those terms. That was my mistaken understanding.

September 16 transcript, pg. 9.

However, a totally different picture emerges from Plaintiffs' Exhs. 11 and 12. The e-mails found in those exhibits indicate that IndyMac was fully aware of the material terms of the settlement as early as March, and agreed with those terms. On March 16, 2009 (three days before the sale of IndyMac to OneWest), Kelly McKinney, a litigation specialist apparently working at or as agent for IndyMac, sent the following e-mail to Schuler–Hintz:

> Hi Kristen,
> I just wanted to check the status on the loan modification packet that Mr. Clawson was working on. Was this packet sent out to IMB yet?

Schuler–Hintz responded at 8:23 PM that evening:

> Hi Kelly:
> Attached is Debtor's offer to modify the loan: which will resolve the pending adversary proceeding. How would IndyMac like to go about effectuating this?

At 8:46 AM on March 17, 2009, McKinney responded as follows:

> Hi Kristen,
> Please advise opposing counsel that a loan modification agreement/work out packet must be completed by the borrower Mr. Clawson, in order for our Loss Mitigation team to modify the loan. Attached is a copy of the loan modification. Please let me know if

you have any additional questions or concerns.

Thanks!

On March 24, 2009 at 10:42 PM, Schuler–Hintz sent the following e-mail to Sternberg:

> Hey David: Attached please find the loan modification package for your client to complete so that we can complete the loan modification. **It is my understanding that everyone is on board with resolving this through the loan modification you outlined.** If you can have this completed we should be one step closer to resolving this matter.
>
> [Emphasis added]

Despite their awareness that Sternberg had reported to the court that the matter was settled (see Plaintiff's Exh. 16), neither Schuler–Hintz nor the defendants (both of which were served with the Clerk's entry of default and May 1 Order to Execute Stipulation at their corporate offices) ever denied the existence of a binding settlement prior to August 5; nor have the defendants ever suggested that there were any unresolved issues or settlement terms that remained outstanding. From March onward, all parties acted as though the adversary proceeding was settled. No further action was taken to foreclose on the property, no motion was filed to set aside the default, and no attempt of any kind was made to respond to the complaint.

■ All of this, as well as the defendants' admission in their proposed conclusions of law, establishes by clear and convincing evidence that there was a complete settlement agreement between the parties. Thus, an evidentiary hearing was unnecessary, since the settlement could be summarily enforced. The defendants' reliance on *Callie v. Near*, 829 F.2d 888 (9th Cir. 1987) is unavailing. There, the district court pieced together an agreement from the parties' correspondence. The Ninth Circuit held that an evidentiary hearing was required where "material facts concerning the *existence* or *terms* are in dispute...." *Id.* at 890. As was true in *Doi v. Halekulani Corp.*, 276 F.3d 1131 (9th Cir.2002), there was no need for an evidentiary hearing regarding the terms of the agreement in this matter, since those terms were clearly spelled out in the July 1 agreement prepared by the defendants and signed by the plaintiffs.

■ It is equally clear that the defendants either accepted the agreement or should be deemed to have accepted it. Regardless of whether IndyMac was fully informed of the plaintiffs' proposal, but simply ignored it, and then misled its attorney by its silence; or IndyMac agreed to the terms of the settlement, but then changed its mind for whatever reason; or IndyMac agreed to the terms of the settlement, but OneWest refused to honor it; or the defendants and OneWest committed other acts of misfeasance or malfeasance that have brought this matter to this sorry state, the result must be the same: the defendants are judicially estopped from denying that they agreed to the terms of the agreement that they drafted and the plaintiffs signed on July 1. The scope and purpose of the doctrine of judicial estoppel was fully explained in *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir.1990), *cert. denied*, 501 U.S. 1260, 111 S.Ct. 2915, 115 L.Ed.2d 1078 (1991):

> The doctrine of judicial estoppel, sometimes referred to as the doctrine of preclusion of inconsistent positions, is invoked to prevent a party from changing its position over the course of judicial proceedings when such positional changes have an adverse impact on the judicial process. [citation omitted] The policies underlying preclusion of inconsistent positions are

"general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings." [citation omitted] Judicial estoppel is intended to protect against a litigant playing "fast and loose with the courts." [citation omitted] Because it is intended to protect the integrity of the judicial process, it is an equitable doctrine invoked by a court at its discretion.

Protecting the integrity of the judicial process is at the heart of this matter. Over the past two years, the average number of adversary proceedings filed per month in the Oakland Division of this court is 37, and the average number of motions for relief from the automatic stay filed per month is some 318. A large percentage of these motions seek orders allowing lenders to go forward with foreclosures on debtors' homes. At each weekly calendar of relief from stay motions, debtors plead with the court for assistance in obtaining a loan modification. Sometimes they have been unable to penetrate the lenders' impenetrable phone tree to talk to a live person; or having reached someone at the other end of the line, they are unable to obtain answers to their inquiries after weeks or months of trying; or they have submitted paperwork to the lender, only to be told that more papers are required, or that the papers they've already submitted have been lost.

Many, perhaps most, of these debtors are not good candidates for a loan modification. But that does not excuse the indifferent and sometimes deplorable treatment they too often receive at the hands of their lenders; nor does it obviate the desperate and helpless condition in which they find themselves. Indeed, never in my 27 years on the bankruptcy bench have I witnessed such financially and emotionally distressed families as I have seen pass through this court over the past two years.

Ultimately, there is little this court can do to facilitate the loan modification process or right the wrongs that debtors may have suffered from that process. That is particularly true in chapter 7 cases such as this, where the automatic stay lifts upon entry of the discharge, regardless of what the court does with a lender's motion for relief from the automatic stay. *See* 11 U.S.C. § 362(c)(2)(C).

But when attorneys come before the court and play "fast and loose" with the truth, or rely on the bureaucratic obfuscations of their clients to dodge commitments they have made, this court is required to act to protect the integrity of its processes. If the court cannot rely on and trust the authority and words of the lawyers that appear before it, it cannot effectively handle the increasingly heavy volume of work confronting it, thus risking systemic collapse. That trust has been breached in this adversary proceeding, and the remedy of judicial estoppel perfectly suits the facts presented.

Accordingly, the defendants are hereby adjudged to have accepted the July 1, 2009 agreement signed by the plaintiffs (Adv. Pro. No. 09–4045 AN, Docket No. 20), and are fully bound by the terms thereof. The terms of that agreement supercede and replace any and all terms that are inconsistent therewith in any and all notes and deeds of trust previously executed by the parties, their successors and assigns.

As for the issue of sanctions, the defendants' failure to appear at status conferences and respond in timely fashion to court orders alone amply support a finding of bad faith in the conduct of this litigation. The total indifference shown towards the court's processes, the waste of judicial resources that resulted, and the misleading statements made to both the court and plaintiffs' counsel, constituted willful misconduct. *In re DeVille,* 361 F.3d 539 (9th

Cir.2004); *see also U.S. v. McCall,* 235 F.3d 1211, 1217 (10th Cir.2000).

Although the court's August 7, 2009 Order Scheduling Evidentiary Hearing does not specifically mention that sanctions might be imposed pursuant to the court's inherent power, the court made its view clear at the August 5 hearing that the bank's conduct in not consummating a settlement might constitute bad faith. August 5, 2009 transcript, pg. 5, Adv. Pro. No. 09–4045 AN, Docket No 31. *See Doi v. Halekulani Corp.,* 276 F.3d 1131 n. 7 (9th Cir.2002); *see also In re Lehtinen,* 564 F.3d 1052, 1060–61 (9th Cir.2009). In accordance with the directive in *DeVille,* 361 F.3d at 545–46, the court has considered whether Bankruptcy Rule 9011 might be applicable here, but has determined that the rule is not up to the task. Accordingly, the court finds that an appropriate sanction in this matter is to require the defendants to pay a reasonable attorney fee to plaintiff's counsel for all time spent on this adversary proceeding since April 29, 2009, less the $500 in sanctions that have already been awarded. Counsel for the plaintiffs is directed to file and serve time records within seven days of the date of this Order.

IT IS SO ORDERED.

### EXHIBIT 1

JaVonne M. Phillips, Esq. SBN 187474

Kristin A. Schuler–Hintz, Esq. SBN 207989

**McCarthy & Holthus, LLP**

1770 Fourth Avenue

San Diego, CA 92101

Phone (619) 685–4800

Fax (619) 685–4810

Attorney for: Defendants

IndyMac Federal Bank FSB and Quality Loan Service Corp.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

In re: Donald L. Clawson, II, Debra A. Clawson, Debtors.

Donald L. Clawson, II and Debra A. Clawson, Plaintiffs

v.

Indymac Federal Bank, FSB and Quality Loan Service Corp., Defendants.

Case No. 08–45900N

Adversary Proceeding No. 09–04045

Chapter 7

**Defendant INDYMAC BANKCORP dba INDYMAC FEDERAL BANK FSB and QUALITY LOAN SERVICE CORP. LIST OF EXHIBITS**

Date 9/16/09

Time: 11:30 AM

Room 220

Pursuant to the scheduling order dated August 5, 2009, Defendant hereby submits this List of Exhibits. Defendants reserve the right to supplement the Exhibit List prior to or at trial based upon additional trial preparation which is ongoing including without limitation, the review of the Plaintiffs Exhibits and Witnesses pursuant to said Scheduling Order.

At present Defendants have no other Exhibits then those referenced by Plaintiffs.

Dated September 9, 2009,

Respectfully Submitted

MCCARTHY & HOLTHUS, LLP

BY: *Kristin A. Schuler–Hintz, Esq.*

Kristin A. Schuler–Hintz, Esq.

Attorney for Defendants

**EXHIBIT 2**

JaVonne M. Phillips, Esq. SBN 187474

Kristin A. Schuler–Hintz, Esq. SBN 207989

**McCarthy & Holthus, LLP**

1770 Fourth Avenue

San Diego, CA 92101

Phone (619) 685–4800

Fax (619) 685–4810

Attorney for: Defendants

IndyMac Federal Bank FSB and Quality Loan Service Corp.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

In re: Donald L. Clawson, II, Debra A. Clawson, Debtors.

Donald L. Clawson, II and Debra A. Clawson, Plaintiffs

v.

Indymac Federal Bank, FSB and Quality Loan Service Corp., Defendants.

Case No. 08–45900N

Adversary Proceeding No. 09–04045

Chapter 7

**DEFENDANT'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Date 9/16/09

Time: 11:30 AM

Room 220

Defendants submit the following Findings of Fact and Conclusions of law required by the Court's Scheduling Order of August 5, 2009.

**I. *Procedural Overview***

This matter is before the Court pursuant to an Adversary Proceeding filed by Plaintiffs DONALD CLAWSON, II and DEBRA A. CLAWSON ("hereinafter Plaintiffs") against Defendants INDYMAC BANICORP, dba INDYMAC FEDERAL BANK FSB and OneWest Bank (hereinafter "Indymac"), and QUALITY LOAN SERVICE, CORP. The original Adversary Proceeding was filed prior to the abandonment and prior to discharge of the Plaintiffs in this case. Defendant INDYMAC BANICORP., INC. dba INDYMAC FEDERAL BANIC FSB (hereinafter "Indymac") commenced the foreclosure proceedings after obtaining relief from the automatic stay. The Complaint was filed in this Adversary Proceeding due to a dispute in the interpretation of the Court's order regarding whether relief from stay on a date certain encompassed a waiver of the 10 day stay or not. Plaintiffs voluntarily withdrew its wrongful foreclosure allegation for sale and violation of the Stay.

The property that is the subject of this dispute is the real property commonly known as 107 Canfield Court, Brentwood, California 94513 hereinafter "Subject Property".

An agreement was thought to have been reached between Plaintiffs and Indymac, by and through the parties' respective counsel. The agreement was tentatively predicated on the Plaintiff allegations that were set forth and filed in the form of an opposition to a motion for relief from stay on December 16, 2008.

However, Defendant Indymac later determined that the assumption made by the bankruptcy department was in error and the settlement was approved without obtaining actual settlement approval and authority.

Thereafter, the Court on its own Orders, requested Indymac to execute the settlement agreement. An Evidentiary Hearing was subsequently set by the Court on August 5, 2009 and further issued an Order Scheduling Evidentiary Hearing on August 7, 2009. The Court after due consideration has set this Evidentiary hearing to review the facts and circumstances.

## II. *Factual Findings*

1. Debtors Obtained a program code "Option ARM, 1, MTA, 30Y" negative amortized loan from Impact Lending, now serviced by Indymac. This loan was an adjustable rate mortgage that 8 was adjusted based upon the MTA Index. The MTA Index is a 12–month treasury average, which is the 12–month average of the monthly average yields of U.S. Treasury Securities adjusted to a constant maturity of one year. The Deed of Trust contains an attorneys' fee clause on page 12, paragraph 22 (see Note and Deed of Trust attached as Exhibits 32 to Plaintiffs List of Exhibits With Attached Exhibits).

2. The Debtors were paying the amount of the monthly mortgage payment changed in May 2009 and in July 2008 due to an impound for unpaid taxes.

3. The Debtors thereafter contacted Indymac, and the parties were unable to reach a modification of the payment. The Debtors could not afford the new payment, and Indymac began foreclosure proceedings due to the payment default.

4. Defendant adopt by this reference the statement of facts contained in Plaintiff's proposed findings of facts and conclusion of law at paragraphs 4 through 40 as though fully set forth herein as the procedural history of the case as evidence by the Court's docket and the correspondence between the parties is undisputed.

## III. *Conclusions of Law*

1. The Note that Plaintiff's received from Impact Lending is a contract which may be modified in appropriate circumstances. Under the authorities of the 9th Circuit, an enforceable settlement agreement need only fulfill two requirements; first, it must be a "complete settlement agreement." *Callie v. Near*, 829 F.2d 888, 889 (9th Cir.1987). Second, the parties "must have either agreed to the terms of the settlement agreement or authorized their respective counsel to settle the dispute." *McCovey v. Pacific Lumber Co.*, 1992 U.S. Dist. LEXIS 10678, at 6–7 (N.D.Cal. May 29, 1992), 1992 WL 228888 (N.D.Cal.)(Citing *Harrop v. Western Airlines, Inc.*, 550 F.2d 1143, 1145 (9th Cir. 1997) per curiam).

2. The subject Agreement, attached as Exhibit 26 to Plaintiff's List of Exhibits satisfies the first prong of the test. As on its face it is a complete agreement.

3. The subject Agreement does not satisfy the second prong of the test as all parties have not agreed to the terms set forth in the Agreement. There was no meeting of the minds and therefore the settlement Agreement in incomplete and unenforceable.

4. Defendant Quality Loan Service Corporation has not consented to the terms of the agreement.

5. Defendant Indymac Bank has not consented to the terms of the agreement.

6. Based upon the foregoing, this matter is referred back into the trial program.

7. Defendants shall file their answers to the Complaint within ten days of the entry of this order.

8. Within 30 days thereafter a discovery scheduling order shall be completed and filed and this matter shall be set for trial forthwith.

Dated September 9, 2009,

Respectfully Submitted

MCCARTHY & HOLTHUS, LLP

BY: *Kristin A. Schuler–Hintz, Esq.*

Kristin A. Schuler–Hintz, Esq.

Attorney for Defendants