**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| VACC, INC., | No. 19-15928 |
| Plaintiff-Appellant, | D.C. No. 3:18-cv-03454 |
| v. | |
| JON DAVIS, | **MEMORANDUM**[*] |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the Northern District of California
Joseph C. Spero, Magistrate Judge, Presiding

Submitted and Argued July 16, 2020
San Francisco, California

Before: LEE and BUMATAY, Circuit Judges, and SILVER,[**] District Judge.

VACC, Inc. appeals the district court's order granting Jon Davis's motion to dismiss. We review de novo and affirm.

VACC sued Davis for claims related to patent violations and trade secrets theft. After a series of negotiations, the parties agreed that they would meet at a

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]    The Honorable Roslyn O. Silver, United States District Judge for the District of Arizona, sitting by designation.

final settlement conference, "read the settlement terms into the record," and "then enter into a formal written settlement agreement," to be drafted by Davis for VACC's review.

Prior to the final settlement conference, Ahmad Bayat, VACC's President, repeatedly asked VACC's attorneys to make sure that Davis represented in the agreement that he had not taken VACC's proprietary information ("representation clause"). VACC's attorneys assured Bayat that the representation clause would be included in the eventual written agreement, but VACC's attorneys never notified Davis about this term.

At the telephonic settlement conference before the magistrate judge, the parties agreed to the following:

> THE COURT: Okay, I'm going to go through the terms. [The Court read the confidential terms of the parties' settlement into the record, which did not include the representation clause.] And so let me start with plaintiff. We'll start with plaintiff's counsel. Is that your understanding of the settlement terms?[1]
>
> [VACC'S COUNSEL]: [. . .] [Y]es, it is.
>
> THE COURT: Thank you, and plaintiff himself, can you also state that you approve of this?
>
> MR. BAYAT: Yes.
>
> THE COURT: Thank you, and how about for defense counsel?

---

[1] To the extent this paragraph incorporates sealed material, we unseal it.

[DAVIS'S COUNSEL]: Yes, we agree those are the terms of the settlement. I will note we also agreed that you would retain jurisdiction and the Northern District would retain jurisdiction over this dispute . . . and [ ] would moderate the terms of the written agreement.

THE COURT: Yeah, let me go back to that, then. So on plaintiff's side, do you agree that this Court will retain jurisdiction over this settlement agreement as stated?

MR. BAYAT: Yes.

[VACC'S COUNSEL]: Yes[.]

Shortly after the conference, the parties entered a joint stipulation stating that they had settled the matter and that the parties would "prepare a written settlement agreement, which shall be moderated by [the magistrate judge] in the event of unresolvable disagreements on its terms." Based on the stipulation, the court dismissed the case with prejudice.

When Davis's counsel emailed a draft settlement agreement to VACC—which was no longer represented by counsel—Bayat refused to sign, insisting that the agreement include the representation clause. Davis's counsel informed VACC that they did not believe this term was part of the parties' settlement, but nonetheless reiterated that the parties needed to "formalize the terms of the settlement" in writing as "a required term of settlement that we all read onto the record." Further negotiations broke down, and VACC sued again. The district court dismissed VACC's suit in full. This appeal followed.

1. VACC contends that the oral settlement was an unenforceable "agreement

3

to agree" because its terms were only "preliminary" and a written settlement was required to finalize the agreement. We disagree.

Under California law, contract formation requires the "mutual consent" of the parties. *Bustamante v. Intuit, Inc.*, 45 Cal. Rptr. 3d 692, 698–99 (Ct. App. 2006). "Mutual consent is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings." *Bustamante*, 45 Cal. Rptr. 3d at 699.

California permits an oral agreement to give rise to a binding contract. *Kreling v. Walsh*, 176 P.2d 965, 973 (Cal. Dist. Ct. App. 1947). "[I]f the respective parties orally agreed upon all of the terms and conditions of a proposed written agreement with the mutual intention that the oral agreement should thereupon become binding, the mere fact that a formal written agreement to the same effect has not yet been signed does not alter the binding validity of the oral agreement." *Banner Entm't, Inc. v. Superior Court*, 72 Cal. Rptr. 2d 598, 604 (Ct. App. 1998). On the other hand, no binding oral agreement exists if "the parties understood that the proposed agreement [was] not complete until reduced to formal writing and signed." *Khajavi v. Feather River Anesthesia Med. Grp.*, 100 Cal. Rptr. 2d 627, 648 (Ct. App. 2000) (quoting *Louis Lesser Enters., Ltd. v. Roeder*, 25 Cal. Rptr. 917, 919 (Dist. Ct. App. 1962)).

Here, all of VACC's outward manifestations indicated assent to the terms of the oral settlement as expressed in open court. Bayat, as VACC's representative, first affirmed that the "terms" read by the court into the record were his "understanding of the settlement terms," and then he indicated he "approve[d]" of those terms. Finally, Bayat "agree[d] that [the] Court will retain jurisdiction over th[e] settlement agreement *as stated*."

Even if Bayat *subjectively* (and reasonably) believed—based on the advice of counsel—that additional terms could be inserted into the settlement agreement at a later time, Bayat's objective words and actions at the settlement conference demonstrate that a binding agreement was made at that time. Nothing in Bayat's outward manifestations suggests an understanding that the oral settlement agreement would be contingent on the reduction of the agreement to writing. Nor has VACC alleged that Davis or his attorneys knew of Bayat's request to add the representation clause in a follow-up written agreement. Accordingly, no allegation supports VACC's contention that the settlement conference was an unenforceable "agreement to agree."

The parties' statements and actions outside the settlement conference confirm their intention to be bound by the oral settlement's terms. Prior to the conference, the parties agreed to "read the settlement terms into the record," and "then enter into a formal written settlement agreement." The parties' post-

conference stipulation of dismissal states, with apparent finality, that "the Parties *have settled* this case pursuant to a confidential settlement agreement." Accordingly, we hold that the oral settlement is enforceable notwithstanding the parties' subjective beliefs regarding additional terms.[2]

Our holding in *Doi v. Halekulani Corp.*, further bolsters our conclusion. 276 F.3d 1131 (9th Cir. 2002). There, the plaintiff agreed to a settlement on the record, in open court, then later sought to introduce additional terms to the written document memorializing the settlement. On appeal, we found the settlement enforceable, *id.* at 1139, explaining that "[a]ny question as to [plaintiff's] intent to be bound was answered when she appeared in open court, listened to the terms of the agreement placed on the record, and when pressed as to whether she agreed with the terms, said 'yeah.'" *Id.* at 1138. Like here, the parties' anticipation in *Doi* of a future written agreement did not negate the binding nature of the oral agreement. *Id.* at 1135.

Whether Bayat reasonably believed he would have an opportunity to insert the representation clause in a written agreement based on his attorney's advice is not before us today. We only review whether his outward expressions at the

---

[2] Although Davis's lawyers stated that the court would "retain jurisdiction over this dispute . . . and would moderate the terms of the written agreement," this fact, standing alone, indicates only that Davis anticipated a memorialization of the settlement agreement—not an entirely new settlement.

settlement conference show that he orally agreed to the settlement's terms. As in *Doi*, we hold that Bayat's statements in court were sufficient to bind VACC. While the magistrate judge could have made clearer that the terms as read into the record were the *only* terms of the settlement agreement, we hold that the settlement agreement is enforceable.

2. VACC also contends that even if the parties entered into an enforceable agreement, it is entitled to rescission because of a mistake of fact. A party seeking rescission on a mistake of fact must establish, among other things, that "the effect of the mistake is such that enforcement of the contract would be unconscionable." *Donovan v. RRL Corp.*, 27 P.3d 702, 716 (Cal. 2001) (quoting Restatement (Second) of Contracts § 153(a) (1981)). Unconscionability involves both procedural and substantive elements. *OTO, L.L.C. v. Kho*, 447 P.3d 680, 689–90 (Cal. 2019).

VACC cannot show either element of unconscionability here. While VACC claims it was "surprised" by the absence of the representation clause in the agreement, it does not claim that the term was surreptitiously withheld by Davis or buried in a footnote, as California law has required to show procedural unconscionability. *See Pinnacle Museum Tower Ass'n. v. Pinnacle Mkt. Dev. (US), LLC*, 282 P.3d 1217, 1232 (Cal. 2012). Substantively, VACC has made no plausible allegations that the oral settlement's terms are "unreasonably favorable"

7

or that it is the weaker party. *See Sonic-Calabasas A, Inc. v. Moreno*, 311 P.3d 184, 202 (Cal. 2013). This is, at worst, a "bad bargain," not an unconscionable one. *Id.* Accordingly, we deny VACC's claim for rescission.

3. VACC's final claims seek relief from the settlement order under Federal Rule of Civil Procedure 60(b)(1) and 60(b)(6). We have previously declined relief under these provisions where a party's injury results from erroneous or negligent legal advice. *See Latshaw v. Trainer Wortham & Co., Inc.*, 452 F.3d 1097, 1101, 1103 (9th Cir. 2006). Bayat's mistake, if any, was related to the advice of his attorneys. Accordingly, Bayat's alleged injury, though possibly actionable under a malpractice suit, does not warrant Rule 60 relief.

\* \* \*

VACC made a deal with Davis in open court. VACC had every opportunity to communicate any unexpressed terms to Davis at that time. Having failed to do so, we decline to disturb the bargain the parties struck.

**AFFIRMED**.

8